Mr. Kahn? Ready when the Court is, Your Honor. You may proceed. May it please the Court. The Veterans Court in this case made two legal errors. First, it held that the term prostrating in Diagnostico 8100 should mean incapacitating. This is the rare case in which the VA's own statements and its own regulatory conduct established the proper interpretation of the term prostrating, which means a state of exhaustion or fatigue. We have in the record prior Board decisions that have adopted that interpretation. We have a regulatory framework that creates a distinction between prostrating and incapacitating. And we also have the fact that the plain and ordinary meaning of the term prostrating is fatigue or exhaustion. But what seems to me to be missing is any suggestion that the Board viewed the two terms as having a different meaning because the Board used prostrating as well as incapacitating. The Board in this case? Yes. So the Board in this case did not expressly equate the two terms. So the term, and this point was made I think in the government's summary of the argument, the Board in reciting the evidence said, among other things, the veteran's condition was not incapacitating. No, but the point is that the Board, for example, at 872 said the headaches were not prostrating. So it's not as though, and there are other places in the opinion where it seems to have said they're not prostrating, though it may also have used the term incapacitating, right? That is correct, and that's exactly the issue. What did it mean when it said they were not prostrating? So what facts was it relying on to get to the legal conclusion under the regulation that the condition, that the headaches that Ms. Griffin was experiencing were not? Then aren't you asking us to review the application of the law to the facts, which we can't do? Not at all, Your Honor. So we're asking simply for an articulation of the interpretation of the term prostrating, which we believe, under the correct interpretation, would require the Board to reevaluate the evidence, and what we're seeking in this case is a remand back to the Board to reevaluate and to first, in the first instance, to undertake an analysis of whether Mr. Griffin is entitled to a staged rating, and then to do so under the correct interpretation of the term The Board did use the term prostrating when it ultimately reached its conclusion, correct? That is correct, but that's... And you have cited to multiple Board opinions where it's clear the Board understands the distinction between the two terms. That's exactly right, Your Honor. And so are we to assume that despite the ultimate use of the correct term, that the fact that they might have at one point used the phrase incapacitating, that the Board somehow forgot about the distinction? I think that's exactly why we brought a challenge to the Board's decision on 7104 D grounds, because all of those things are unclear, and the Veterans Court basically said that the Board's decision can be read to equate prostrating and incapacitating, and that's the interpretation that the Board gave to the regulation, and so now we're operating in a world where the Veterans Court has made that finding, but if we were to go back to the Board's decision and start again, it's not clear what the Board is saying, because the Board is saying you didn't satisfy the legal requirement of characteristically prostrating, and to just use that word again and again in this decision is not sufficient. You have to cite evidence, and what is it in the record that leads you to that conclusion? And in the course of that analysis, you're also required to set forth analysis of the facts that are material and favorable to the claimant, which in this case, the Board didn't do. It seems to me that you have to show that when they applied the term prostrating, that they had used it in an incorrect way, and that they had equated it with the use of incapacitating in other places in the rating schedule, but it seems to me that the opinion of the Board doesn't show that. It doesn't show that they used prostrating in something other than the ordinary sense. So, if we were to discuss, for example, the Board's finding at, just to use the word, I think, I don't know if the Court has in mind a specific site, but the idea... How about A73 towards the bottom? Right. Where it says, neither the medical evidence nor the veteran's assertions indicate that for the period considered in this appeal, he experienced any migraine headaches that were characteristically prostrating. Right. And that is merely an articulation, a restatement of the legal standard. The legal standard under Diagnostic Code 8100 is whether or not, for an increased rating up to 30 percent, the legal standard is whether or not the headaches were characteristically prostrating. So, this is a fact-finding here based on the applicable law of the reg, which calls for, you know, that it has to be a prostrating headache. It is a fact-finding only insofar as the Board is summarizing the evidence in the record and then saying the evidence doesn't satisfy the legal requirement. But what we're arguing here is that the legal requirement, as set forth in all of the prior Board decisions that are cited in the parties' briefs, the Board repeatedly makes a distinction between prostrating and incapacitating. And so, your problem is that the Veterans Court twice said that the Board interpreted the phrase as headaches characterized by incapacitation and again said that the Board then was correct in concluding that prostrating means headaches as equates to incapacitating headaches. And that's your problem? That the Veterans Court interpreted the Board decision to make that specific finding? That is exactly right. So, we are where we are. We're stuck with the Veterans Court's finding on that issue. But even if we were to go back to the Board's decision, we would say, and this is the argument that we made to the Veterans Court, even if we were to go back to the Board's decision, we would say, and we did say, that there is an inadequate statement of reasons and bases for the Board's conclusions. A, because there was absolutely no consideration of a stage rating under Diagnostic Code 8100, and there was absolutely no consideration, express analysis or discussion of the February 2007 statements that at least, you know, through to the briefs filed in this Court, there was no dispute that those statements were material to the stage rating claim, that those statements were sufficient in and of themselves to support a stage rating. And for the first time in the government's brief on appeal to this Court, we see the argument that those statements were insufficient. But all the way through the Veterans Court, there was no argument that those statements were insufficient in and of themselves to establish an entitlement to stage rating. If in fact the Board found that, you know, putting aside what the Veterans Court said, if the Board actually were to find, either we concluded it did or we concluded there was no prostrating headaches at any point, is the stage rating argument still relevant? It is, because the Board would have to find that the manifestations of Mr. Griffin's headaches, which included numerous sick days from work in the early part of 2007, and we would say late 2006, which also included interference with his employment, that the Board would have to say that those were not prostrating and that those were not sufficiently exhaustive or fatiguing, that they do not rise to the level of being characteristically prostrating under the regulation. So what we're basically saying is merely parroting back the regulation is not sufficient. So the Board has to cite what it is about the evidence that leads to that conclusion. And in this case, to equate the capacitation with incapacitation, what the Veterans Court did was improper. But then even if we were to set that aside, the Board was required to articulate what it is about that evidence that doesn't rise to the level of prostration. Okay. Anything further? So, and I think it's important on appeal to understand what, because the government reads into the Veterans Court decision more than what's there. So the Veterans Court did not find that the February 2007 statements were immaterial. The Veterans Court did not find that the Board considered Mr. Griffin's eligibility for a stage rating. It did not find that those facts, the February 2007 statements, could not themselves support a stage rating. All of those facts were conceded up through to this Court. And so on that record, we would submit alone that Mr. Griffin is entitled to a review under 7104D, an adequacy of reasons and basis as to why he's not entitled to a stage rating and why he's not entitled to an analysis, an express analysis of the facts that are favorable to his claim. How does Cook v. Principi work here in this case? I mean, as I understand that case, we held that we don't look behind the application of law to the facts in these sorts of cases, even though in that case, I believe it was Mr. Cook who felt like there was a piece of evidence that wasn't properly considered by the Board, and we said we don't have jurisdiction to even look at that. Right. And the difference here is that we're not challenging any of the findings of the Veterans Court. So we're not challenging any of the findings. We're not challenging the application of the standard articulated by the Veterans Court to the facts as they existed. Were the legal principle to be articulated correctly, and that would be the legal principle that I think there's largely agreement on, and were that principle to be applied by the Veterans Court, again, we're only seeking a remand. Were that to be applied correctly, we believe that there would be a basis to find that Mr. Griffin is entitled to a stage rating under the facts. But the court doesn't need to look at those facts because the only issue before the court is whether or not 7104D and the operating regulations require an analysis of facts material to the claimant and an analysis of the stage rating where the facts present that cause. And that's it. After that, we don't need to look at any of the facts. Yeah, I'm afraid that the standard that you're suggesting in that respect would invalidate my thought of the Board decision. I mean, there's an enormous number of veterans' claims that have to be processed here, and to require the kind of detailed articulation in each case would potentially slow this process down even more than it can slow it down already. And I think that's an argument that the government made in its brief, which is it's an unworkable standard, and I think that's basically the effect of their argument. And that's not the case, so that is the standard articulated not only by this court, by the Veterans Court, all the sister courts of appeal, and applied to all of the administrative agencies. And the Board is no different. And the standard is workable insofar as it only requires an explanation of material facts. So the government is quibbling. What would you have them have said? What would you think they should have said that they didn't say? They should have said only two things. First, Mr. Griffin is or is not entitled to a staged rating, and then expressed the reason for that. And Mr. Griffin, his February 2007 statements with respect to missing work, taking sick days, interference with his employment, that those are or are not relevant, and here's why. And nothing more than that was required. Now, in a case where Mr. Griffin has been complaining about headaches for almost 25 years, those statements were in his notice of appeal to the Board. They're among the most powerful and favorable evidence in the case to him. And so for the Board to just list the evidence or note the evidence and then attach a conclusory statement at the end that says, this evidence doesn't satisfy the legal standard, that's not sufficient. And again, the key is the materiality components. It's material. It's only claims that are material. And so if the Veterans Court or the Board had found that this is not a material fact, that would not require them to address it. And the Veterans Court could have made that finding, but it didn't make that finding either. Okay. I think we're out of time. I just want to continue the rebuttal. So we'll give you two minutes for rebuttal. I'm sorry, Your Honor? We'll give you two minutes for rebuttal. Thank you, Your Honor. Ms. Kirchner? Your Honor, may it please the Court. The Veterans Court relied upon the definition in Dorland's Illustrated Medical Dictionary properly defined the phrase characteristic prostrating headaches as used in the Diagnostic Code 8100 to mean extreme exhaustion or powerlessness. Mr. Griffin contends that if the Board interpreted the term prostrating headaches as being synonymous with incapacitating, meaning completely disabling, then in that case the Board would have erred because it would have used a too stringent standard. The short response is that that did not happen in this case. But the Veterans Court said it did. Excuse me? We are left with the fact that the Veterans Court said that it actually did. But that is not – that's not correct. Because when you look at the Board's decision at pages – So we're just supposed to ignore the fact that we have a Veterans Court decision out there that says that they equated – that the Board did equate the two and that it was appropriate to equate the two. That's not precisely what the Veterans Court said. Before the Veterans Court, there was only one argument. And that was that there was an inadequate statement of the reasons and basis for the decision of the Board. That was the only argument presented to the Veterans Court. No argument about what does the standard mean at all. What the Veterans Court said was, first of all, it used the definition from Dorland's Illustrated Medical Dictionary, meaning the definition of extreme exhaustion or powerlessness. That's what the Veterans Court used as its definition. But the sentence before that and the sentence after that both say, in other words, the same thing as incapacitation, which I think you're conceiving would be too stringent a standard. No, I'm not conceiving that it's too stringent. Actually, incapacitating is not as precise a term as the standard itself. The standard itself, what you have to show is extreme exhaustion and powerlessness. And what we said in our brief is that that overlaps with lay definitions of incapacitating. We don't have just lay definitions of incapacitating here. We have lots of VA regulations that define incapacitating in a very technical way. That's true. And then what I got confused by was your brief suggesting that we should give deference to this particular interpretation of prostrating to mean the same thing as incapacitating. And then if you have all these regulations that say what incapacitating means, you're telling us that prostrating means bed rest plus treatment by a doctor, which is what the regulatory definition is for incapacitation. That's not the government's argument in this case. What we have argued is that, first of all, there's no medical definition of incapacitating. When incapacitating occurs in the diagnostic code, it is only with reference to other ailments, not with reference to headaches. For example, it's used in reference to hepatitis, liver disease. Right. You have regs that talk about prostrating. You also have regs that talk about incapacitating, right? For certain other ailments, not for headaches. Yes, so therefore they can't mean the exact same thing. We're not contending that they mean the exact same thing. What we said in our brief is that there's overlap between the two terms. And what Mr. Griffin had to do at the Veterans Court is he had to show that there was an error made by the board. And what the Veterans Court said is, you haven't shown us that there's any error. The problem with the overlap is that the overlap is that an incapacitating headache would also, by definition, necessarily have to be prostrating. But a prostrating headache doesn't necessarily have to be incapacitated. Well, it could also work the other way, with all due respect. Because I could be incapacitated by a cold, but no one would conclude that I have extreme exhaustion. Incapacitating is not as a precise term as the language used in the regulation. And it could be either more stringent, or it could be less stringent. Your point here, if I understand it correctly, is that when the Veterans Court used the term incapacitating, it wasn't using the definition that appeared in these other regulations, but was just speaking about it in a more general layman's sense. Yes, that's exactly right. The record shows that. Because the way this came about is Mr. Griffin went to a medical examination in December of 2010, and he described his dealing with these headaches. And he said, my headaches are not incapacitating. And the doctor duly reported it in his medical report. And he said, these headaches are not incapacitating. And there is a detailed description of the medical exam at page A72 of the record. And the exam is very, very detailed. The doctor explains that Mr. Griffin has told him that he has headaches, that he takes Tylenol, that they go away in two to three hours with the medication, and that they are associated with the change of shift, and they do not cause any loss of work. And that Mr. Griffin said they're not incapacitating. Now, also right above that in the opinion is a detailed description of the August 2006 medical exam. Very, very detailed. There, Mr. Griffin says, I take Tylenol or Motrin. The headaches are gone in approximately one to two hours. I don't miss any work. And the doctor concludes these are not frustrating headaches. They don't meet the standard. Then the board on page A73 of its opinion makes explicit findings of fact, which are not challenged in any respect. They were not challenged before the Veterans Court. And they're not challenged here today. And the findings are that what the evidence shows is that the headaches slowed him down at times, such as at the two-month intervals when his shift changes. But that the headaches are not incapacitating. Now, that use right there is a reference to this December 2010 medical exam, where Mr. Griffin said the headaches are not incapacitating. What happens is every two months I change my shift. Then because of the stress of changing the shift, I have headaches. The problem is if, in fact, there is a difference between the term incapacitating and prostrating, then findings of fact that say that something is not incapacitating are insufficient. Are they not? The findings in fact here are much more detailed than just being not incapacitating. But are you asking us, though, to basically look at the facts and decide that they wouldn't qualify as prostrating as well as not qualifying as incapacitating? The board did that. No, I'm not asking this court to do it. The board did it. The board made a finding of fact detailing all of this evidence and came to the conclusion that all of the evidence did not meet the standard of 8100, where you had to have prostrating attacks once a month in order to get the 30% rating. The board also specifically addressed the veteran's own statement. That's the statement that he made in February 2007, where he said there's only two sentences in the record. He said, the headaches are continuing to bother me. I have missed work recently. I think it's the last couple of months is the way he puts it. And that's detailed at page A71 of the board opinion. And then at page A73 of the board opinion, the board explicitly refers to that. It says, neither the medical evidence nor the veteran's own assertions, and I put in the word own, the veteran's assertions indicate that for the period considered in this appeal, he experienced any migraine headaches that are characteristically prostrating. So that's an explicit finding of fact that the standard has not been met. And it takes into consideration the statement made by Mr. Griffin in February 2007 and finds that it is not persuasive evidence to show that the standard has been met. Rather, as they go on in the very next sentence, they make a finding that the evidence shows that the headaches slow him down at times. Right, but then they go on to say, and we're not incapacitating. Right, that's true. That is exactly what the veteran himself, Mr. Griffin, said about his headaches in the December 2010 medical examination. What page is that on in the appendix where you say that he himself invoked the word incapacitating? Yes, that you will find at page A-166. And that's the doctor reporting that that is what Mr. Griffin said. And then again at page A-168, the doctor repeats it. I'm sorry. It says the veteran reports no incapacitating headaches monthly. Is that the line you're referring to? Yes. Subsection A of A-166. Yes. Yes. Are we supposed to assume that the veteran chose to use that word or that that's the way the doctor posed the question? There's no, it's not in quotes. Well, I don't think you will find any quotes at any point during the doctor's opinion, but he refers at numerous points to information provided to him by the veteran, and that's how he would have to come to his diagnosis. He has to rely on information coming to him from the veteran and then give his conclusions. And, of course, he does look at the rest of the records. I'm not saying that he doesn't. I'm just saying that he does have to evaluate what he's told and report it. Now, what we're saying here is that Mr. Griffin has not shown any errors in the board's decision and he hasn't shown any errors in the veteran's court's decision because what the veteran's court did is say, the only argument is, is there a sufficient statement of reasons? Veteran's court says, yes, there is, and that you haven't shown that the board's understanding of the regulation is erroneous. What about the staged rating issue? With regard to the staged rating issue, that's actually very simple. The board makes an explicit finding that none of the evidence shows any frustrating attacks, and that includes the veteran's own assertions, and it says that in its opinion. Now, if you don't have any at all, then there is no period of time where a staged rating would be appropriate, and it does recognize at page A71 that in other circumstances there could be a staged rating. What if you took numerous sick days over the last couple of months due to your headaches, due to your attention headaches? Would that be a frustrating headache? Well, I think it would. Inability to go to work? I think that would have to be evaluated. For example, if you look at the board decisions, which are cited in Mr. Griffin's brief, the board decisions talk about whether the exhaustion has been such that the only way for the veteran to deal with it is you have to lie down and rest, and it says that's what the standard means. So if that's what led somebody not to go to work, that they were so extreme exhaustion and powerlessness that they had to lie down in bed and get some rest, then you would have a case meeting the 10% rating. Now, if you're just staying home because your head hurts, and you go about activities at home, and you cook, or you do whatever you want to do, and you just feel like you can't handle work, that's not going to meet the regulation. And I would point the court to the board decision cited in Mr. Griffin's brief, where they refer to evidence that a veteran has to lie down and get rest. Is there anything in the VA manual or elsewhere that suggests what the meaning of prostrating is? I'm not, no. So, but the board decision cited referred to the necessity of lying down. They cite a case where a veteran, he's at work, but what he does is he lies down on the grass. Accordingly, we think the decision should be affirmed. Thank you for this question. Mr. Kahn, did you represent the veteran before the Veterans Court? We did, yes, sir. The government says that this misuse of the term incapacitating was not raised in the briefing or argument before the Veterans Court, this misuse of the term incapacitating by the board. Is that correct? It was in the context of a challenge to the statement under 7104D challenge. So what we argued to the Veterans Court was it's unclear what the board did. Is the board, and so what is the definition? Is that page in the appendix here? I believe it is, but if not, we can provide a supplemental brief. But we argued to the Veterans Court and set forth dictionary definitions, I believe, that set forth the definition of prostrating that's the same as the definition of prostrating that we're advocating on appeal to this court. And what we said to the Veterans Court was it's unclear what the board did. Did it interpret it the way that we're interpreting it? Did it not interpret it the same way? And what the Veterans Court said is no, it did interpret it, and it interpreted it to mean incapacitating. And that, now that we have that clarity from the Veterans Court, now we're seeking a review of that decision. Is 852 to 854 an excerpt of your brief to the court of Veterans Court? It is. And I believe this... I guess 854, you have a heading that says the board failed to consider favorable evidence. Right, and I believe it's the next page. Next page is here. We argued on which was 855. Unfortunately, we didn't make it into the joint appendix, and I'm reading from the brief. The board makes no attempt to define characteristically prostrating or constitutes a characteristically prostrating headache before using it as a reason to preclude Mr. Griffin from any benefits under the diagnostic code. That's not quite the same thing as saying that the board made an error by equating prostrating and incapacitating. Was that argument made in the brief? That argument was not specifically made. However, this is very important, it was not apparent based on the board's decision what the board did. Was it equating those two terms or was it not? And so what we argued to the Veterans Court is we need clarity. It wasn't appropriate for us to seek review of what we didn't know was a legal determination. Did you ask that the case be sent back so that the board would clarify what it meant by using those two terms as potentially simultaneous or equivalent? We did exactly that. We sought review under 7104D for an adequate statement of reasons and bases, both as to the stage rating issue and, as I just read from our brief, on what it did with respect to the interpretation of the regulation. Thank you. You were doing this pro bono? We were, yes. We thank you for your service. The case is submitted.